UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| VAUGHN COLLINS,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MONMOUTH COUNTY<br>CORRECTIONAL INSTITUTE, et al.,<br><br>　　　　Defendants. | Civil Action No. 21-11490 (FLW)<br><br>MEMORANDUM & ORDER |

　　Plaintiff Vaughn Collins, currently confined Monmouth County Correctional Institute ("MCCI"), seeks to multiple bring civil actions *in forma pauperis*, without prepayment of fees or security, asserting claims for relief pursuant to 42 U.S.C. § 1983, against Monmouth County Correctional Institute, Officer J. Holler, and Officer J. DiFrega. At this time, the Court will grant Plaintiff's IFP application and dismiss the Complaint for failure to state a claim for relief pursuant to the Court's screening authority under 28 U.S.C. § 1915(e)(2)(B). The Court will also direct the Clerk of the Court to terminate the motion for pro bono counsel, which does not relate to this matter.

　　In his Complaint, Plaintiff alleges that he purposefully flooded his cell on March 24,[1] after Defendant Officer DiFrega told Plaintiff he could not use the telephone because Plaintiff had been disrespectful to Officer Holler. Complaint at 6-7. Plaintiff warned Officer DiFrega that he would

---

[1] Plaintiff does not provide the full date of the incident, and he refers to March and April interchangeably. It appears that he flooded his cell during DiFrega's shift, which was from 3pm-11pm. *See* Complaint at 5-7.

1

flood his cell and proceeded to do so. *Id.* at 7. After Plaintiff flooded his cell, Supervisor Halle, who is not listed as a Defendant, turned the water off in Plaintiff's cell.[2] *Id.* Plaintiff alleges that he asked Defendant Officer DiFrega and Holler to turn the water back on "numerous times" but the Officers ignored these requests. *Id.*

The following morning, Captain Resse came to Plaintiff's cell, and Plaintiff complained about the Defendants Officers' treatment of him. Captain Resse saw the water on the floor of Plaintiff's cell and called a crew to clean the cell, but Captain Resse did not turn the water back on. *See id.* Captain Reese is not listed as a Defendant in this action and Plaintiff does not state whether he asked Captain Resse to turn the water back on in his cell.

Due to the lack of water in his cell, Plaintiff alleges that he could not flush the toilet or wash his hands after using the toilet, and that he stopped eating because the toilet was full, and it smelled terrible. *Id.* Plaintiff put a towel over the toilet due to the smell. *Id.* Plaintiff provides no other facts about the hardships caused by the lack of water in his cell during this period.

Plaintiff alleges that his cell water was turned back on in the afternoon on March 27 when he asked Supervisor Howard to turn on the water. *Id.* Plaintiff also alleges he told Supervisor Howard that he needed something to clean the toilet, and Supervisor Howard cleaned the toilet herself. *Id.*

The Court construes Plaintiff to allege that MCCI violated his constitutional rights under the Eighth Amendment by holding him in a so-called "dry cell" for approximately three days after he flooded his cell.[3] He further alleges that Monmouth County's punishment for flooding a cell is

---

[2] Later in the Complaint, Plaintiff states that Supervisor Halle is on video holding pepper spray outside his cell during the flooding incident. Plaintiff does not assert that he was pepper sprayed during the flooding incident and has not named Supervisor Halle as a Defendant.

[3] A "dry cell" is a cell with a toilet with the water turned off. *Gilblom v. Gillipsie*, 435 F. App'x. 165, 166 (3d Cir. 2011).

turning off the water or pepper spraying the culprit. Finally, Plaintiff alleges that Officers DiFrega and Holler violated his Eighth Amendment rights by refusing to turn the water back on in his cell. He seeks one million dollars in damages.

The Eighth Amendment "prohibits any punishment which violates civilized standards and concepts of humanity and decency." *Young v. Quinlan*, 960 F.2d 351, 359 (3d Cir. 1992), superseded by statute on other grounds as stated in *Nyhuis v. Reno*, 204 F.3d 65, 71 n.7 (3d Cir. 2000) (citations omitted). Plaintiff's cruel and unusual punishment claims must be analyzed under Fourteenth Amendment due process standards—as opposed to Eighth Amendment standards—because it appears he was a pretrial detainee at the time of the alleged constitutional violations. *See Thomas v. Cumberland Cnty.*, 749 F.3d 217, 223 n. 4 (3d Cir. 2014) (noting that plaintiff's claims that arise when he is a pretrial detainee are prosecuted under the Due Process Clause).

To prevail on a due process-based conditions of confinement claim, an inmate must show that the "conditions amount to punishment of the detainee;" "under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." *Hubbard v. Taylor*, 538 F.3d 229, 231 (3d Cir. 2008) (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). In making this determination, courts ask two questions: (1) whether the conditions serve any legitimate purpose; and (2) whether the conditions are rationally related to that purpose. *Id.* (quoting *Union County Jail Inmates v. Di Buono*, 713 F.2d 984, 992 (3d Cir.1983)). A condition is legitimate if it is reasonably related to the governmental considerations of "maintaining security and order and operating the institution in a manageable fashion." *Id.* (quoting *Bell*, 441 U.S. at 538–39). "[M]aintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees." *Bell*, 441 U.S. at 546. "In assessing whether the

conditions are reasonably related to the assigned purposes, [a court] must further inquire as to whether these conditions cause [inmates] to endure [such] genuine privations and hardship over an extended period of time, that the adverse conditions become excessive in relation to the purposes assigned to them." *Hubbard*, 399 F.3d at 159 (quoting *Union County Jail Inmates v. DiBuono*, 713 F.2d 984, 992 (3d Cir.1983)). Moreover, the Supreme Court has cautioned lower courts that "in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters." *Id.*

"[T]he Due Process rights of a pre-trial detainee are at least as great as the Eighth Amendment protections available to a convicted prisoner," *Reynolds v. Wagner*, 128 F.3d 166, 173 (3d Cir. 1997), and so the Eighth Amendment sets the floor for the standard applicable to pre-trial detainees' claims. *See* Bell, 441 U.S. at 544. Under the Eighth Amendment, administrative confinement in a dry cell, though unpleasant and often unsanitary, is constitutional "so long as the conditions of that confinement are not foul or inhuman, and are supported by some penological justification[.]" *Thomas v. Tice*, 948 F.3d 133, 138–39 (3d Cir. 2020) (citing *Young*, 960 F.2d at 364–65). Nevertheless, administrative confinement in a dry cell must also serve some penological interest. *Thomas*, 948 F.3d at 139 (3d Cir. 2020) (citing *Young*, 960 F.2d at 364); *see also Gilblom v. Gillipsie*, 435 F. App'x. 165, 169 (3d Cir. 2011) (explaining that "maintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees" and holding that "the need to ensure that contraband would not be brought into the prison certainly justified [the plaintiff's] placement in a dry cell") (citing *Bell,* 441 U.S. at 546).

Here, Plaintiff's allegations that he was housed in a dry cell for approximately three days after he purposely flooded his cell do not rise to the level of a constitutional violation. From the outset, the initial decision to shut the water off occurred because Plaintiff purposefully flooded his cell, and turning off the water served the legitimate penological interest in preventing Plaintiff from flooding his cell again.[4] *See, e.g.*, *Reeves v. Hemsley*, No. 18-14061, 2019 WL 2560133, at *12 (D.N.J. Jun. 21, 2019) ("Indeed, the legitimate non-punitive reasons for putting him a dry cell – which [plaintiff] expressly pleads in his amended complaint – demonstrate that his placement there was reasonable under the totality of the circumstances"). As such, the initial decision to turn off the water in Plaintiff's cell appears reasonable.

Plaintiff also alleges that the water in his cell was turned off for approximately three days, but he fails to provide sufficient facts to suggest that the conditions in the dry cell over that three-day period amount to punishment. In *Young* for example, the facts supporting an Eighth Amendment violation included:

> not allowing Young to leave his cell more than once to defecate or urinate over a period of several days, not providing Young with a plastic urinal for 29 hours, not allowing Young to empty his urinal more than twice, not allowing Young to wash his hands before eating, not allowing Young to bathe or shower, not providing Young with toilet paper despite his diarrhea, not providing Young with water to drink, suggesting instead that he drink his urine, and the mocking taunts by guards and their threats to chain Young to a steel slab if he complained about his conditions

---

[4] The plaintiff in *Young v. Quinlan* also purposely flooded his cell because his cellmate had sexually assaulted him and prison officials had denied plaintiff's requests to be moved. 960 F.2d at 354-55. The Third Circuit "agree[d] with the district court that putting Young in a dry cell may have been a reasonable response to unwarranted flooding by Young, [but found that] there is a serious question whether Young's act was precipitated by the official indifference to Young's safety concerns." *Id.* at 364. Here, Plaintiff pleads no such extenuating circumstances.

*Young*, 960 F.2d at 365.

In contrast, the facts provided by Plaintiff are much less egregious. Plaintiff asserts that he was left in a flooded cell on March 24, but the cell was cleaned of toilet water the following day. Plaintiff further alleges that the water was not turned back on in his cell until the afternoon of March 27. During this time, Plaintiff alleges only that he could not wash his hands after using the toilet in his cell, that the toilet smelled terrible, and he eventually stopped eating because the toilet was full. There are no allegations that he was denied water to drink, showers, toilet paper, or opportunities to wash his hands or use a toilet outside his cell. Plaintiff also does not allege that he was exposed to any significant risk of harm while confined in a dry cell. *See, e.g.*, *Alvarez v. County of Cumberland*, No. 07–3462009 WL 750200, at *5 (D.N.J. Mar. 18, 2009) (noting that the plaintiff contracted MRSA, specifically boils in his groin area, while in isolation, which indicated that he lived and slept exposed to feces in his cell).

For these reasons, the Court is unable to find that shutting off the water in Plaintiff's cell for approximately three days amounts to punishment under the Fourteenth Amendment, and the Court will dismiss the Fourteenth Amendment conditions of confinement claims on this basis.

The Court also dismisses the § 1983 claims against Monmouth County Correctional Institute because a county jail is not a proper defendant under § 1983. *See Barrett v. Essex Cty. Corr. Facility*, No. 15-595, 2015 WL 1808523, at *3 (D.N.J. Apr. 16, 2015) ("A county jail, such as the Essex County facility, is not a person subject to suit under § 1983."); *see also Ingram v. Atl. Cty. Justice Fac.*, No. 10-1375, 2011 WL 65915, *3 (D.N.J. Jan. 7, 2011).

The Court notes that Plaintiff may be attempting to allege a claim against the County of Monmouth pursuant to *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). Even if the Court were to construe Plaintiff to assert a *Monell* claim against the County of

Monmouth, *see, e.g.*, *Mazariegos v. Monmouth County Correctional Inst.*, No. 12–5626, 2014 WL 1266659, at *6 (D.N.J. Mar. 25, 2014) ("While Plaintiff names MCCI as Defendant, this Court construes the proper defendant to be Monmouth County…."), he fails to state a claim for relief because he has not provided sufficient facts showing that any individual defendants inflicted constitutional harm. *See Grazier ex rel. White v. City of Philadelphia*, 328 F.3d 120, 124 (3d Cir. 2003) ("There cannot be an 'award of damages against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm.'" (quoting *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986))).

Moreover, municipal liability under § 1983 may not be asserted under a *respondeat superior* theory of liability but must instead be founded on allegations that the government itself supported a violation of constitutional rights. *See Monell*, 436 U.S. at 690. Municipal liability exists where execution of the municipality's policy or custom, whether made by lawmakers or decisionmakers whose edicts may fairly represent official policy, inflict the injury. *Id.* at 694.

Under Third Circuit law, when a plaintiff brings a complaint under *Monell* against a municipality, the specific offending custom, policy, or practice must be pleaded in the complaint. *See McTernan v. City of York*, 564 F.3d 636, 638 (3d Cir. 2009) ("To satisfy the pleading standard, [a plaintiff] must identify a custom or policy and specify what exactly that custom or policy was.") (citing *Philips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008)). In addition, a plaintiff must also allege that the policy or custom was the "proximate cause" of his injuries, *see Estate of Roman v. City of Newark*, 914 F.3d 789, 798 ( 3d Cir. 2019) (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996), "by demonstrating an 'affirmative link' between the policy or custom and the particular constitutional violation he alleges. *See id.* (citing *Bielevicz v. Dubinon*,

7

915 F.2d 845, 851 (3d Cir. 1990)). At the pleading stage, this generally requires some facts that tend to show that policymakers were aware of similar unlawful conduct in the past, but failed to take precautions against future violations, and that this failure, at least in part, led to the injuries in question. *See id.*

Plaintiff vaguely asserts that Monmouth County punishes inmates who flood their cells by having prison officials turn off the water or pepper spray the inmate. But he fails to provide facts showing that this amounts to a policy or custom (as opposed to an isolated incident) or that any policymakers were aware of similar unlawful conduct in the past and failed to take actions to prevent future violations.

For the reasons explained in this Memorandum and Order, the Complaint is dismissed in its entirety pursuant to the Court's screening authority under 28 U.S.C. § 1915(e)(2)(B). Plaintiff may submit an Amended Complaint as to the individual Defendants and the County of Monmouth and a motion to reopen within 30 days to the extent he can provide additional facts that cure the deficiencies in his federal claims for relief.

Finally, the Court will direct the Clerk of the Court to terminate the motion for pro bono counsel, ECF No. 2, in light of the dismissal of the Complaint in its entirety and because it does not relate to the claims in this action.[5]

**IT IS THEREFORE**, on this 8th day of December 2021,

**ORDERED** that Plaintiff's application to proceed *in forma pauperis* is **GRANTED** (ECF No. 1-1); and it is further

**ORDERED** that the Complaint shall be filed; and it is further

---

[5] The motion for pro bono counsel relates to a separate matter pending before the Court, *i.e.*, Civil Action No. 21-2034, and Peter Kober, Esq. has entered an appearance in that case. *See* Civ. Act. No. 21-2034 at ECF No. 15.

**ORDERED** that, pursuant to 28 U.S.C. § 1915(b) and for purposes of account deduction only, the Clerk shall serve a copy of this Order by regular mail upon the Attorney General of the State of New Jersey and the Administrator of Monmouth County Correctional Institute; and it is further

**ORDERED** that Plaintiff is assessed a filing fee of $350.00 and shall pay the entire filing fee in the manner set forth in this Order pursuant to 28 U.S.C. § 1915(b)(1) and (2), regardless of the outcome of the litigation, meaning that if the Court dismisses the case as a result of its *sua sponte* screening, or Plaintiff's case is otherwise administratively terminated or closed, § 1915 does not suspend installment payments of the filing fee or permit refund to the prisoner of the filing fee, or any part of it, that has already been paid; and it is further

**ORDERED** that pursuant to *Bruce v. Samuels*, 136 S. Ct. 627, 632 (2016), if Plaintiff owes fees for more than one court case, whether to a district or appellate court, under the Prison Litigation Reform Act (PLRA) provision governing the mandatory recoupment of filing fees, Plaintiff's monthly income is subject to a simultaneous, cumulative 20% deduction for each case a court has mandated a deduction under the PLRA; *i.e.*, Plaintiff would be subject to a 40% deduction if there are two such cases, a 60% deduction if there are three such cases, etc., until all fees have been paid in full; and it is further

**ORDERED** that pursuant to 28 U.S.C. § 1915(b)(2), in each month that the amount in Plaintiff's account exceeds $10.00, the agency having custody of Plaintiff shall assess, deduct from Plaintiff's account, and forward to the Clerk of the Court payment equal to 20% of the preceding month's income credited to Plaintiff's account, in accordance with *Bruce*, until the $350.00 filing fee is paid. Each payment shall reference the civil docket numbers of the actions to which the payment should be credited; and it is further

**ORDERED** that the Complaint is dismissed in its entirety pursuant to 28 U.S.C. 1915(e)(2)(B) for failure to state a claim for relief; and it is further

**ORDERED** that Plaintiff may submit an Amended Complaint and move to reopen this matter within 30 days of the date of this Memorandum and Order to the extent he can cure the deficiencies in his Complaint; and it is further

**ORDERED** that if Plaintiff fails to submit an Amended Complaint within 30 days, this dismissal will automatically convert to a dismissal with prejudice; and it is further

**ORDERED** that the Clerk of the Court shall **ADMINISTRATIVELY TERMINATE** the motion for pro bono counsel, ECF No. 2, in light of the dismissal of the Complaint in its entirety and because the motion relates to a separate civil matter in which counsel has already entered an appearance; and it is further

**ORDERED** that the Clerk of the Court shall send a copy of this Memorandum and Order to Plaintiff at the address on file and **CLOSE** this matter accordingly.

/s/ Freda L. Wolfson
Freda L. Wolfson
U.S. Chief District Judge